STATE of North Dakota, Plaintiff and Appellee,

v.

Gary F. BURGARD, Defendant and Appellant.

Cr. No. 890236.

Supreme Court of North Dakota.

July 3, 1990.

John P. Van Grinsven III (argued), Asst. State's Atty., Minot, for plaintiff and appellee.

Lundberg, Nodland, Schulz, Lervick, Tharaldson & Dickson, P.C., Bismarck, for defendant and appellant; argued by Irvin B. Nodland, Bismarck.

GIERKE, Justice.

Gary Burgard appeals from a judgment of conviction entered upon a jury verdict finding him guilty of delivery of a controlled substance and conspiracy to deliver a controlled substance. We affirm.

In late 1987, Charles Turner, an undercover officer with the Drug Enforcement Unit, was working in the Minot area with a confidential informant, Larry Martin. On December 18, 1987, Martin introduced Turner, using the alias "Steve," to Todd Rosemore at Rosemore's place of business. Turner and Rosemore discussed the possibility of Rosemore procuring marijuana for Turner. Rosemore indicated that he did not have any marijuana at that time, but he placed a telephone call, asking for "Gary," in an attempt to locate some marijuana. When Rosemore was unable to locate "Gary," he advised Turner and Martin to get back to him later.

Turner and Martin contacted Rosemore again later that evening and were informed that Rosemore would be able to obtain marijuana for them. They returned to Rosemore's business and Turner gave Rosemore $280 for two ounces of marijuana. Rosemore told them to go to his new business location [1] and he would meet them there with the marijuana.

---

**1.** Rosemore was in the process of moving his business to a new location.

Law enforcement surveillance units followed Rosemore's vehicle to a trailer court. The vehicle was observed parked directly in front of Gary Burgard's mobile home. Surveillance units again followed Rosemore's vehicle to the new business premises, where Rosemore gave Turner the marijuana and $40 change. Rosemore reiterated that he had obtained the marijuana from "Gary."

Turner had no further contact with Rosemore until March of 1988, when, as part of the ongoing investigation, Turner called Rosemore on several occasions seeking to purchase more marijuana. During one of these telephone calls Rosemore confirmed that his source for marijuana was "Gary" in Minot.

On May 9, 1988, Turner again contacted Rosemore, identified himself as a drug enforcement agent, and asked Rosemore to meet with him at the Minot Police Department. During that meeting Rosemore admitted his involvement in the December 18, 1987, drug transaction and gave a statement indicating he had obtained the marijuana from Gary Burgard.

Rosemore also agreed to cooperate with law enforcement officers and placed a telephone call from the police station to Burgard. During this conversation, which was recorded by the police, Rosemore asked to purchase an ounce of marijuana, to which Burgard replied, "no problem, just swing by." Rosemore placed a second recorded telephone call to Burgard on May 11, 1988, seeking to purchase marijuana, but Burgard said that he needed to "wait a little while." Rosemore called Burgard again later that day, and Burgard responded that he was going to "hang low" because he suspected that he was under police surveillance.

Burgard was subsequently arrested and charged with delivery of a controlled substance and conspiracy to deliver a controlled substance. Rosemore testified at

trial that on December 18, 1987, he had driven to Burgard's mobile home, purchased the marijuana from Burgard for $240, and delivered the marijuana to Turner. The jury rendered verdicts of guilty on both counts, and a judgment of conviction was entered.

Burgard raises the following issues on appeal:

I. Was Burgard convicted on the uncorroborated testimony of an accomplice in violation of Section 29–21–14, N.D.C.C.?

II. Did the trial court erroneously admit hearsay evidence?

III. Was Burgard's conspiracy conviction supported by the law and the evidence?

## I. CORROBORATION OF ACCOMPLICE TESTIMONY

Burgard asserts that he was improperly convicted of delivery of a controlled substance because the only evidence supporting the conviction is the uncorroborated testimony of an accomplice, Rosemore.[2] Section 29–21–14, N.D.C.C., requires such corroboration:

> *"Testimony of accomplice—Corroboration required.*—A conviction cannot be had upon the testimony of an accomplice unless he is corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

In *State v. Haugen,* 448 N.W.2d 191, 194–195 (N.D.1989), we summarized the application of the corroboration requirement:

> "The purpose of corroborating evidence is to show that accomplices are reliable witnesses and worthy of credit.... However, under Section 29–21–14 it is not necessary to corroborate every fact

---

2. The State has not asserted that Rosemore was not an accomplice. *But see State v. Ennis,* 334 N.W.2d 827, 832 (N.D.), *cert. denied,* 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 681 (1983) (the purchaser of illegal drugs cannot be an accomplice to delivery to himself). In this case, how-

ever, there was the additional factor of a subsequent delivery to Turner. Because the State has not raised the issue, we need not address whether Rosemore was an accomplice under these circumstances.

testified to by an accomplice.... All that is required is that the evidence, circumstantial or otherwise, corroborate the testimony of an accomplice as to some material fact or facts, and tends to connect the defendant with the commission of the crime.... It is not necessary that the corroborating evidence be sufficient, in itself, to warrant a conviction or establish a prima facie case.... Furthermore, the State need not point to a single isolated fact which is sufficient corroboration, as it is the combined and cumulative weight of the evidence other than the testimony of the accomplice witness which satisfies the statute.

. . . . .

" 'The corroboration [of an accomplice's testimony] need not directly link the accused to the crime.' See *Byers v. State,* 641 S.W.2d 629, 634 (Tex.App.1982). Rather, corroboration merely requires that there be evidence *'tending to connect the defendant with the offense committed.'* [Emphasis in original.] *Byers v. State,* 641 S.W.2d at 633. See also 1 *Underhill's Criminal Evidence* § 183 (6th Ed.1973) [corroboration need not connect the defendant directly with the offense; it must merely tend to connect the defendant]." [Citations omitted].

It is for the trial court in the first instance to determine whether there is any corroborative evidence, but the weight to be accorded that evidence is for the jury:

"When an accomplice testifies, the trial court must first determine, as a matter of law, whether other evidence corroborates that testimony. When the trial court has determined that other evidence corroborates the accomplice's testimony, the sufficiency of all of the evidence is for the jury to decide.... While the existence of corroborating evidence is for the trial court, the credibility and weight of that evidence is for the jury." *State v. Hogie,* 454 N.W.2d 501, 503 (N.D.1990) [Citations omitted].

*See also State v. Neurohr,* 376 N.W.2d 805, 806 (N.D.1985); *State v. Lind,* 322 N.W.2d 826, 842 (N.D.1982).

Burgard asserts that "[n]o evidence whatsoever was admitted as to Count 1 of the information which in any manner established criminal conduct on the part of Gary Burgard other than testimony of an alleged accomplice." Burgard misinterprets the standard. The corroborating evidence need not "establish criminal conduct," but need only corroborate the accomplice as to some material fact and *tend to connect* the defendant with the crime. *E.g., State v. Haugen, supra,* 448 N.W.2d at 194. Furthermore, the corroborating evidence need not, in isolation, be incriminating, if the combined and cumulative evidence other than the accomplice's testimony tends to connect the defendant with the commission of the offense. *State v. Hogie, supra,* 454 N.W.2d at 504; *State v. Lind, supra,* 322 N.W.2d at 843.

The applicable standard recognizes the underlying purpose of the statute, which is to assist the jury in assessing the credibility of a testifying accomplice:

" 'But the corroboration of accomplices need not include the corroboration of every material fact testified to by the accomplices. These accomplices are witnesses themselves, and their credibility is for the jury. Thus it is not necessary that the corroborative testimony be in itself strong enough to support a conviction. The corroboration must be such as to have a tendency to connect the defendant with receiving stolen property knowing it to be stolen when he received it. If there is such corroborative testimony, then the jury may from that infer that the accomplices spoke the truth as to other matters—they being the judge of the credibility of the witnesses.... *The purpose of corroborative testimony is to show that the accomplices are reliable witnesses and worthy of credit;* but must be on that phase of their testimony which tends to connect the defendant with the commission of the crime.' " *State v. Smith,* 238 N.W.2d 662, 670 (N.D.1976) (quoting *State v. Marcovitz,* 63 N.D. 458, 462–463, 248 N.W. 481, 484 (1933)) [Citations omitted].

For corroboration of Rosemore's testimony, the State relies upon the testimony of Turner and Martin that Rosemore indicated both before and after the December 18, 1987, drug transaction, that "Gary" was the source of the marijuana,[3] and upon the testimony of law enforcement officers who followed Rosemore's vehicle from his place of business to Jefferson Trailer Court, observed Rosemore's vehicle parked directly in front of Burgard's residence, and then followed the vehicle to Rosemore's new business location. Rosemore's unsolicited revelation that he would try to get the marijuana from "Gary," and his subsequent confirmation of "Gary" as his source, corroborates Rosemore's story at trial and refutes any suggestion that Rosemore fabricated his testimony in an attempt to minimize his own criminal involvement. There was also testimony by law enforcement officers who followed Rosemore's vehicle to Burgard's residence and then to Rosemore's new business location, where the delivery to Turner took place. The evidence corroborates Rosemore's testimony that he had driven to Burgard's home, purchased the marijuana from Burgard, and driven to his business where he delivered the marijuana to Turner. Viewed in toto, the evidence significantly corroborates Rosemore's trial testimony and tends to connect Burgard with the commission of the offense.

Burgard asserts that the result in this case should be controlled by our decision in *State v. Haugen*, 449 N.W.2d 784 (N.D. 1989). In *Haugen*, the defendant had been implicated by an alleged accomplice in the burglary of a bar. The only corroborating evidence offered by the State was testimony of police officers that Haugen "customarily drove" a green and white Ram Charger truck and that they saw a green and white Ram Charger truck in the vicinity shortly before the burglary. *Haugen, supra*, 449 N.W.2d at 788. We held that the evidence was not sufficient corroboration

for the accomplice's testimony, stating that "the presence of an ordinary, unidentified, green and white Ram Charger" did not support "the inferences the State urges as to ownership of the vehicle, identity of the driver, or identity of the passenger." *Haugen, supra*, 449 N.W.2d at 789.

*Haugen* is distinguishable. The officers in this case did not testify that an ordinary, unidentified vehicle went to an ordinary, unidentified mobile home which was similar to Burgard's home. Their unrefuted testimony established that Rosemore's vehicle traveled to Burgard's mobile home and then returned directly to Rosemore's business, where Rosemore delivered the marijuana to Turner. Further corroboration is provided in this case by Rosemore's contemporaneous statements identifying the source of the marijuana as "Gary."

We conclude that the evidence, viewed as a whole, corroborated Rosemore's testimony and tended to connect Burgard with the offense of delivery of a controlled substance. Accordingly, the trial court did not err in submitting the case to the jury.

## II. HEARSAY

Burgard asserts that on two separate occasions the trial court erroneously admitted hearsay evidence.

The first allegation of hearsay concerns Turner's testimony that Rosemore had stated that his source of marijuana was "Gary in Minot." At trial Burgard raised a hearsay objection to this testimony, the State responded that it was a prior consistent statement which was not hearsay, and the trial court admitted the evidence.

Rule 801(d)(1)(ii), N.D.R.Evid., governs admissibility of prior consistent statements:

"*(d) Statements which are not hearsay.* A statement is not hearsay if:

"*(1) Prior statement by witness.* The declarant testifies at the trial or hearing

---

**3.** We have held in a similar case that statements made by an accomplice before he realizes that he is dealing with law enforcement agents, and before he has a reason to incriminate others, may constitute corroborating evidence. *State v. Lind, supra*, 322 N.W.2d at 842–843. Thus,

Rosemore's attempt to telephone "Gary" to obtain marijuana, his statements indicating that he would get the marijuana from "Gary," and his subsequent confirmation that he had in fact obtained it from "Gary," may be used to corroborate his trial testimony.

and is subject to cross-examination concerning the statement, and the statement is ... (ii) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive."

The hearsay declarant, Rosemore, testified at trial and was subject to cross-examination. Therefore, his prior consistent statement was not hearsay if it was offered to rebut an express or implied charge of recent fabrication or improper influence or motive.

▬ Defense counsel in opening argument to the jury stated that no delivery had taken place, and clearly implied that Rosemore fabricated the story after his arrest in an attempt to diminish his own involvement. Burgard's entire theory of the case was that Rosemore lied about Burgard's involvement in order to minimize his own involvement and to appease the police. Assertions of recent fabrication or improper influence or motive made during counsel's opening statement may trigger application of Rule 801(d)(1)(ii), N.D.R.Evid., and open the door to admissibility of prior consistent statements of the witness. *State v. Reinart*, 440 N.W.2d 503, 507 (N.D.1989); *see also* Binder, Hearsay Handbook § 2.14, at 27 (2d ed. Supp.1989). We conclude that Rosemore's statement was not hearsay and its admission was not error.

Burgard also asserts that the trial court erred in allowing Turner to testify regarding the second May 11, 1988, telephone call between Rosemore and Burgard. Turner testified that Rosemore repeated the contents of the telephone call to him immediately after it occurred, and that Rosemore told him that Burgard said he was going to "hang low" because he suspected the police were watching him. Burgard asserts that Turner's testimony on this point was multiple-level hearsay and that it was error to admit it into evidence.

We find it unnecessary to address whether the statements were admissible under some exception to the hearsay rule, because we conclude that any error in admitting this evidence was harmless error.

Rule 52(a), N.D.R.Crim.P., provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Similarly, Rule 103(a), N.D.R.Evid., states that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."

▬ The evidence challenged by Burgard was merely cumulative of other testimony which had already been presented to the jury. Rosemore had previously testified, without objection, about the content of this telephone conversation, including the statement specifically challenged by Burgard here, *i.e.* that Burgard had stated his intent to "hang low." Erroneous admission of evidence which is merely cumulative to other properly admitted evidence is not prejudicial, does not affect substantial rights of the parties, and accordingly is harmless error. *State v. Lind, supra,* 322 N.W.2d at 837–838; *State v. Fuchs,* 219 N.W.2d 842, 847 (N.D.1974); *see also Staiger v. Gaarder,* 258 N.W.2d 641, 646 (N.D.1977).

## III. CONSPIRACY

Burgard asserts that his conspiracy conviction must be reversed because a defendant cannot be convicted of conspiracy based upon conduct involving only the defendant and persons working for or in collaboration with law enforcement officials. Burgard also asserts that the State failed to prove commission of an overt act designed to effect the objectives of the conspiracy.

▬ Section 12.1–06–04, N.D.C.C., requires two elements for commission of criminal conspiracy: (1) an agreement to engage in conduct which constitutes an offense, and (2) commission of an overt act to effect an objective of the conspiracy. *State v. Coutts,* 364 N.W.2d 88, 91 (N.D. 1985). Burgard was charged with conspiracy based upon his involvement in the December 18, 1987, drug transaction and/or upon the May 1988 telephone calls from Rosemore.

Both of the issues raised by Burgard are relevant only as to the May transactions. Burgard in fact premises this argument in his appellate brief with the assertion that the conspiracy charge based upon the December 1987 transaction fails for the same reason he relied upon to challenge the delivery conviction: insufficient corroboration of Rosemore's testimony.

 We have held that Rosemore's testimony was sufficiently corroborated, and thus the presumption upon which Burgard's arguments rest is invalid. The jury's verdict may therefore be upheld if the evidence is sufficient to support a conspiracy conviction based upon the December 1987 transaction. Rosemore was not at that time acting in collaboration with the police, and overt acts which effected an objective of the conspiracy were committed. We have previously noted that a defendant may be convicted of delivery of a controlled substance and conspiracy to deliver a controlled substance based upon the same transaction. *State v. Mayer*, 356 N.W.2d 149, 151–152 (N.D.1984). In this case, there is the additional allegation, supported by the evidence, that Burgard knew that the marijuana he sold to Rosemore was going to be delivered to a third person, so the conspiracy reached beyond the single sale to Rosemore.

We conclude that Burgard's conspiracy conviction is amply supported by the applicable law and the evidence.[4]

The judgment of conviction is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

---

[4.] Our resolution of this issue renders it unnecessary to discuss whether a defendant may be convicted of conspiracy based upon conduct involving only the defendant and law enforcement officials.