Argued and submitted September 25, affirmed December 18, 1985, reconsideration denied March 28, petition for review pending 1986

## STATE OF OREGON,
*Respondent,*

*v.*

## JON LELAND BIGEJ,
*Appellant.*

(84-10401; CA A35170)

711 P2d 189

John Henry Hingson III, Oregon City, argued the cause and filed the brief for appellant.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant appeals his conviction for driving under the influence of intoxicants. ORS 487.540. He assigns as error the admission of a certificate attesting to the accuracy of the intoxilyzer machine used to test the alcohol content of his breath. Defendant objected to receipt of the certificate on the grounds that the certificate is hearsay, denies him the right to confront a witness against him and is expert opinion testimony not subject to cross-examination. We affirm.

This court has recently addressed the hearsay and Confrontation Clause arguments. *See State v. Conway,* 70 Or App 721, 690 P2d 1128 (1984) (the admission of intoxilyzer certifications satisfies the confrontation clauses under the state and federal constitutions); *State v. Sparks,* 66 Or App 974, 675 P2d 191, *rev den* 297 Or 339 (1984); *State v. Smith,* 66 Or App 703, 675 P2d 510 (1984) (certificates of inspection admissible under public records exception to hearsay rule. OEC 803(8)(b)). We see no need to discuss them further here and therefore address only the expert testimony argument.[1]

Defendant argues that the certificate contains an expert opinion to the effect that the intoxilyzer is "accurate" and, because the declarant-technician was not present in the courtroom, defendant was unable to cross-examine him to determine the underlying facts and data on which the opinion is based. It follows, defendant reasons, that the evidence is inadmissible. *See* OEC 705.[2] Defendant's objection is not well taken for two reasons.

The first is that the certifications are not expert testimony. Rather, they are simply recordations of purely "ministerial observations." *State v. Smith, supra,* 66 Or App at 706. They do no more than record simple and routine technical inspections or tests performed in accordance with the statutory requirements. *See* ORS 487.815(3)(c). Even

---

[1] Defendant presents several other assignments of error, none of which requires discussion.

[2] OEC 705 provides:

"An expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

assuming, however, that the certifications are a form of expert testimony, defendant fares no better. Business or official records, such as hospital medical records, may contain expert opinions; they are nevertheless admissible. Such records are inherently reliable; their use in lieu of live testimony is a practical necessity; and they are likely to reflect more accurately what occurred on a given occasion than is the independent memory of a live witness. The certifications are offered simply to show that the statutory prerequisites to admissibility of the breath test result have been met, that the machine was certified within 90 days of administration of the test. It is the fact of certification, not the process or details of the accuracy test, which is in issue.

OEC 702[3] states the criteria for admitting expert testimony. It provides that any person possessing a particular body of knowledge may testify "in the form of an opinion or otherwise" if the knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue." However, defendant's objection to the introduction of the certificate does not challenge its admissibility under OEC 702. Defendant instead argues that, because the state did not disclose the facts and the data on which the opinion was based, he was entitled, under OEC 705, to cross-examine the witness. Defendant's reliance on OEC 705 is misplaced.

OEC 705 presupposes that the expert witness is on the stand. After the witness has offered an opinion, the opposing party may then seek to elicit the underlying facts or data on which the opinion is based and attempt to rebut or discredit the expert's opinion. In this case, however, we are faced with a document containing the opinion of an out-of-court declarant. Defendant's objection, although couched in the language of OEC 705, is, in essence, a hearsay objection. As previously mentioned, we have already held the certificates of accuracy admissible under the public records exception to the hearsay rule, OEC 803(8)(b). *State v. Smith, supra.*

---

[3] OEC 702 provides:

  "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

The public records exception was recognized at common law and its rationale is explained in McCormick, *Evidence,* § 315 (2d ed 1972) at 735:

> "The special trustworthiness of official written statements is found in the declarant's official duty and the high probability that the duty to make an accurate report has been performed.
>
> "* * * * *
>
> "A special need for this category of hearsay is found in the inconvenience of requiring public officials to appear in court and testify concerning the subject matter of their statements. Not only would this disrupt the administration of public affairs, but it almost certainly would create a class of official witnesses. Moreover, given the volume of business in public offices, the official written statement will usually be more reliable than the official's present memory. For these same reasons, there is no requirement that the declarant be shown to be unavailable as a witness." (Footnotes omitted.)

The Superior Court of New Jersey has held that the routine nature of breathalyzer inspections strengthens the trustworthiness of the certifying process.

> "The duty performed by the coordinator in testing the instrument to determine whether it is operating properly requires little or no exercise of discretion. While the coordinator must be trained to perform this duty, his determination is primarily the result of a mechanical process, *i.e.,* whether the instrument is operating accurately within tolerable limits based on the test performed." *State v. McGeary,* 129 NJ Super 219, 227-28; 322 A2d 830 (1974).

We agree. The technician's certification bears those indicia of reliability traditionally associated with public records, and it is admissible for that reason. OEC 705 is thus relevant—if it is relevant at all—only to the extent that, despite the certificate's reliability, a defendant chooses to cross-examine the expert.

If the defendant in a case such as this has a genuine question regarding the facts or data or the trustworthiness of the technician's opinion, nothing prevents an inspection of the official records in question before trial. A defendant who wishes to challenge the opinion may call the technician as a witness and subpoena further documentation. We are not prepared, however, to require the presence in the courtroom of

the technician who signed the certificate of accuracy in every case of the type involved here. We hold that the certificate was properly admitted.

Affirmed.