STATE of North Dakota, Plaintiff and Appellee,

v.

Mary J. NEHRING, Defendant and Appellant.

STATE of North Dakota, Plaintiff and Appellee,

v.

Emil O. NEHRING, Defendant and Appellant.

Cr. Nos. 930127, 930128.

Supreme Court of North Dakota.

Dec. 2, 1993.

Janet H. Zander of Anseth & Zander, Williston, for defendants and appellants.

Peter H. Furuseth, State's Atty., Williston, for plaintiff and appellee.

LEVINE, Justice.

Mary J. Nehring and Emil O. Nehring appeal from criminal judgments entered against each of them for two counts of delivery of a controlled substance. The Nehrings' convictions arose from an undercover operation conducted by the Williams County Sheriff's Department. Because we believe the facts of these cases do not establish entrapment as a matter of fact or law, we affirm.

During most of 1992, the Williams County Sheriff's Department employed Richard White to make undercover drug buys. The Sheriff's Department gave White a list of suspected drug users and dealers, which included the Nehrings. Over several months, White established a friendship with the Nehrings. On September 7, 1992, White routed a drug buy through the Nehrings' home. He contacted a dealer, Terri Cole, who was unaware that White was working for the Sheriff's Department, and asked her to deliver some quarter bags of marijuana to the Nehrings' home, where he would pick them up. White went to the Nehrings' home and told Emil Nehring that he wanted two bags. Emil gave White the bags and White paid him. On September 10, 1992, White went to the Nehrings' home again, where he

purchased a third quarter bag from Emil. On October 5, 1992, White routed another drug buy through the Nehrings' home. He again contacted Cole and asked her to deliver a quarter bag of marijuana to the Nehrings' home, where he would pick it up. White picked up the marijuana while Mary Nehring was present. He later returned with money for the purchase, which he left with Mary, and picked up a second quarter bag of marijuana, for which he paid Cole directly the next day. White resigned from his position with the Sheriff's Department in December 1992, criticizing the Department's methodology. According to White, the Sheriff's Department had targeted the Nehrings for political reasons and had authorized White's drug use during the undercover operation.

Mary and Emil were tried separately after waiving their rights to a jury trial. The trial court entered judgments against Mary and Emil after finding each guilty of two counts of delivery of a controlled substance under NDCC § 19–03.1–23(1)(b).[1] The trial court sentenced each to a one-year term of imprisonment, which it suspended, and ordered each to pay a fine and restitution. Mary and Emil appealed from the criminal judgments against them. We consolidated their oral arguments and because the facts of their respective cases are substantially identical and the same law is applicable in each case, we resolve their cases in this single opinion.

On appeal, the Nehrings raise two issues: first, whether the trial court erred in finding that the evidence was insufficient for entrapment, and second, whether Mary and Emil established entrapment as a matter of law under *State v. Kummer*, 481 N.W.2d 437 (N.D.1992). We address each issue in turn.

1. NDCC § 19–03.1–23 provides, in relevant part:
    "(1) Except as authorized by this chapter, it is unlawful for any person to willfully, as defined in section 12.1–02–02, manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance; provided, that any person whose conduct is in violation of section 12–46–24, 12–47–21, or 12–51–11 may not be prosecuted under this subsection. Any person who violates this subsection with respect to:

    "(b) Any other controlled substance classified in schedule I, II, or III, is guilty of a class

    B felony, except that any person who delivers one hundred pounds [45.36 kilograms] or more of marijuana is guilty of a class A felony."
    Schedule I classifies marijuana as a controlled substance. NDCC § 19–03.1–05(5)(q) (1991) (current version at NDCC § 19–03.1–05(5)(s) (Supp.1993)).

The Nehrings' first argument is that the evidence at trial was sufficient to establish entrapment as a matter of fact. The defense of entrapment is set out in NDCC § 12.1–05–11:

"1. It is an affirmative defense that the defendant was entrapped into committing the offense.

"2. Entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

"3. In this section 'law enforcement agent' includes personnel of federal and local law enforcement agencies as well as state agencies, and any person cooperating with such an agency." NDCC § 12.1–05–11 (1985) (current version at NDCC § 12.1–05–11 (Supp.1993)).[2]

■ North Dakota applies the objective test for entrapment, in which the focus is on the conduct of the law enforcement agents and its likely effect on a normally law-abiding person. E.g., State v. Hoffman, 291 N.W.2d 430 (N.D.1980). Predisposition of the defendant to commit the crime is irrelevant to the defense, and the defendant has the burden of proving entrapment by a preponderance of the evidence. E.g., Kummer, supra. To establish entrapment, a defendant must prove two elements: that law enforcement agents induced the commission of the crime and that such inducement was likely to cause a normally law-abiding person to commit the crime. E.g., id.

■ The Nehrings argue that White's testimony at trial about political targeting and the list of suspected drug users and dealers sufficiently proves entrapment. Our standard of review for a criminal bench trial is the same as if the case had been tried to a jury. State v. Johnson, 425 N.W.2d 903 (N.D.1988). In cases challenging a factual conclusion that entrapment did not occur, we do not weigh conflicting evidence, nor do we judge the credibility of witnesses; instead, we look only to the evidence and its reasonable inferences most favorable to the verdict to see if substantial evidence exists to warrant a conviction. State v. Overby, 497 N.W.2d 408 (N.D.1993).

■ The Nehrings do not dispute the sufficiency of the evidence supporting the trial court's separate determinations that they delivered a controlled substance under NDCC § 19–03.1–23(1)(b), supra. Therefore, our only concern is whether the evidence was sufficient for the trial court to decide in each case that Mary and Emil were not entrapped. State v. Weisz, 356 N.W.2d 462 (N.D.1984). At Mary's trial, White testified that a sergeant in the Sheriff's Department "told me Girard Nehring [Emil's brother] had run for sheriff at one time, and it would be real good if I build [a case on the Nehrings] to keep him from running again." White testified to the same effect at Emil's trial. The sergeant also testified at Mary's trial and denied that he told White to target the Nehrings specifically, for any reason. The trial court found White's testimony about political targeting at both trials incredible. We will not reweigh the conflicting evidence regarding political targeting nor judge White's credibility. The Sheriff's Department did not deny that it provided White with a list of suspected drug users and dealers. However, the trial court found that the

2. In 1993, the legislature amended section 12.1–05–11 to provide:

"1. It is an affirmative defense that the defendant was entrapped into committing the offense.

"2. A law enforcement agent perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, the law enforcement agent induces or encourages and, as a direct result, causes another person to engage in conduct constituting such a crime by employing methods of persuasion or inducements which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

"3. In this section 'law enforcement agent' includes personnel of federal and local law enforcement agencies as well as state agencies, and any person cooperating with such an agency."

The amended statute became effective on August 1, 1993, see N.D. Const. art IV, § 13, after the Nehrings' convictions, and thus, is not applicable to their cases.

list, by itself, was not evidence of entrapment. The trial court commented, "[I]f someone new comes to a community and is not given whatever scuttlebutt is available by law enforcement officials, it would be rather bizarre...." We agree that the list, standing alone, does not prove that law enforcement agents induced the commission of the crime or likely would cause a normally law-abiding person to commit the crime. We conclude that the evidence was sufficient in both cases to allow the trial court to reject Mary's and Emil's entrapment defenses.

■ The Nehrings' second argument is that the facts of their cases establish entrapment as a matter of law under *Kummer*, *supra*. Ordinarily, entrapment is a question of fact. *Id.* However, a trial court may find entrapment as a matter of law where the facts and their inferences supporting a finding of entrapment are undisputed. *Id.*

■ In *Kummer*, this court found that where law enforcement agents unlawfully provided drugs used in a reverse sting operation, there was entrapment as a matter of law. The agents in *Kummer* illegally removed cocaine from the police evidence room and gave it to police informants, who in turn sold it to Kummer. The sale was the basis for Kummer's conviction. The *Kummer* analysis is unique because it focused exclusively on the illegal conduct of the law enforcement agents. The undisputed evidence that law enforcement agents obtained cocaine without legal authorization established entrapment as a matter of law.

The Nehrings argue that because it is undisputed in both cases that Cole supplied the marijuana at White's direction, *Kummer* controls. We disagree. Although Cole delivered the marijuana to the Nehrings' home at White's request, Cole was not a law enforcement agent. The definition of a law enforcement agent includes one who cooperates with a law enforcement agency, NDCC § 12.1-05-11(3), *supra*, but an unwitting instrument of a law enforcement agent does not cooperate with a law enforcement agency within the meaning of NDCC § 12.1-05-11(3). *State v. Berger*, 285 N.W.2d 533 (N.D.1979). Law enforcement did not provide the marijuana routed through Mary and Emil, let alone obtain it in an unauthorized fashion, and

therefore, *Kummer* does not apply. We conclude that the facts of this case do not establish entrapment as a matter of law.

Affirmed.

NEUMANN and MESCHKE, JJ., concur.

SANDSTROM, J., concurs in the result.

VANDE WALLE, Chief Justice, concurring specially.

I agree that the "sting" operation does not constitute entrapment. I did not believe the "reverse sting" operation constituted entrapment in *State v. Kummer*, 481 N.W.2d 437 (N.D.1992). I agreed with the result in that case because "the actions of the law enforcement officers were contrary to public policy" in that the officers, without authority of their superiors took drugs from the evidence room at the police department. I suggested we conclude that "as a matter of public policy we will not sustain a conviction obtained by intolerable conduct on the part of law enforcement agents, notwithstanding the entrapment statute." *Kummer*, *supra* at 444–445 (Vande Walle, J. concurring specially). Despite White's testimony to the contrary, the trial court found no intolerable conduct.

I agree the conviction should be affirmed.