2001 ND 202

**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Richard C. BAUMGARTNER, Defendant and Appellee.**

No. 20010169.

Supreme Court of North Dakota.

Dec. 20, 2001.

Donald R. Becker, State's Attorney, Linton, ND, for plaintiff and appellant.

Donavin L. Grenz, Linton, ND, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] The State appealed from an order dismissing two counts of criminal conspiracy to take game in excess of the legal limit charged against Richard C. Baumgartner. The State contends the district court erred in its decision that two undercover wardens were co-conspirators and accomplices to the crime charged. The State further contends the district court erred in its decision Baumgartner was entrapped as a matter of law. We conclude the wardens are not accomplices and Baumgartner was not entrapped as a matter of law. Therefore, we reverse and remand.

[¶ 2] On October 31, 2000 two undercover game wardens, working in cooperation with the North Dakota Game and Fish Department, met with Richard C. Baumgartner. The wardens discussed State game laws with Baumgartner and hired him to act as a hunting guide for the following two days. On November 1, Baumgartner led the two undercover wardens on a hunt as promised. The wardens had each taken three birds (the legal hunting limit) by 1:30 p.m. For the next three hours, however, Baumgartner further guided the hunting party; together the wardens took three more birds, thereby exceeding the legal limit. At the end of the day, one of the wardens recorded the day's bounty with a photograph showing Baumgartner with nine pheasants and three grouse.

[¶ 3] The following day, Baumgartner again guided the two undercover wardens on a hunt. As they did the day before, the wardens took their daily limit of three pheasants each. Also, as before, Baumgartner continued to guide the hunting party. One of the wardens killed an additional pheasant and again exceeded the legal limit.

[¶ 4] Baumgartner was charged with two counts of conspiracy to take pheasants in excess of the legal daily limit. He was not charged with illegally taking game. The matter was slated for trial. But at a pretrial telephonic conference, the trial court dismissed the charges.

[¶ 5] The trial court found the wardens were co-conspirators and accomplices. As a result, Baumgartner could only be convicted if, in addition to the testimony of the two wardens, the State presented corroborating evidence. The trial court determined the State was unable to produce such evidence. Further, the trial court found as a matter of law the State had entrapped Baumgartner. The trial court then asked the defense counsel: "I presume you are going to make a motion to dismiss on that basis?" To which the defense counsel responded simply: "Yes." In turn, the trial court dismissed the case with prejudice.

## I

[¶ 6] The North Dakota Century Code authorizes the State to appeal "[a]n order quashing an information or indictment or any count thereof." N.D.C.C. § 29-28-07(1). "We have consistently held that an order dismissing a criminal complaint, information, or indictment is the equivalent of an order quashing an information or indictment and is therefore appealable under the statute." *State v. Gwyther*, 1999 ND 15, ¶ 11, 589 N.W.2d 575. *See also State v. Howe*, 247 N.W.2d 647, 652 (N.D.1976). A trial court's decision to dismiss a conspiracy charge, however, will not usually be disturbed unless the trial court abused its discretion. *Gwyther* at ¶ 12. But questions of law are fully reviewable on appeal. *State v. Kenner*, 1997 ND 1, ¶ 7, 559 N.W.2d 538.

### A

[¶ 7] The State first asserts the trial court erred in finding the wardens were co-conspirators in the effort to take game in excess of the daily limit. Section 12.1-06-04(1), N.D.C.C., provides:

A person commits conspiracy if he agrees with one or more persons to engage in or cause conduct which, in fact, constitutes an offense or offenses, and any one or more of such persons does an overt act to effect an objective of the conspiracy. The agreement need not be explicit but may be implicit in the fact of collaboration or existence of other circumstances.

[¶ 8] When an undercover law enforcement agent feigns agreement to a course of conduct, he or she is not a co-conspirator. *See State v. Rambousek*, 479 N.W.2d 832 (N.D.1992). This is because the criminal conspiracy statute requires "an agreement to engage in conduct which constitutes an offense," as well as the "commission of an overt act to effect an objective of the conspiracy." *State v. Burgard*, 458 N.W.2d 274, 279 (N.D.1990). But the term accomplice is not synonymous with co-conspirator, and there is no rule requiring corroboration of a co-conspirator's testimony. *State v. Lind*, 322 N.W.2d 826, 842 n. 6 (N.D.1982). Accordingly, whether or not the wardens were accomplices is dispositive of the appeal, and we need not determine whether or not the officers were co-conspirators.[1]

### B

[¶ 9] The State argues the wardens were not accomplices to Baumgartner's alleged crime; therefore, the wardens' testimony need not be corroborated. This question is fully reviewable on appeal, for when "the facts as to the witness' culpability are neither disputed nor susceptible of different inferences, then [whether or not one is an accomplice] is a question of law for the court." *State v. Thorson*, 264 N.W.2d 441, 442 (N.D.1978).

[¶ 10] Section 29-21-14, N.D.C.C., prohibits the conviction of an accused person on the testimony of an accomplice unless the testimony is corroborated by other evidence. Section 12.1-03-01, N.D.C.C., provides a person is an accomplice when:

a. Acting with the kind of culpability required for the offense, he causes the other to engage in such conduct;

---

1. Further, even if the wardens were co-conspirators "[i]t is no defense to a prosecution under [the conspiracy statute] that the person with whom such person is alleged to have conspired has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense, is immune from prosecution, or is otherwise not subject to justice." N.D.C.C. § 12.1-06-04(4).

b. With intent that an offense be committed, he commands, induces, procures, or aids the other to commit it, or, having a statutory duty to prevent its commission, he fails to make proper effort to do so; or

c. He is a coconspirator and his association with the offense meets the requirements of either of the other subdivisions of this subsection.

Therefore, one cannot be an accomplice without having the requisite criminal intent for the underlying offense, even if he or she is a co-conspirator. *See* N.D.C.C. § 12.1–03–01; *see also* C. Torcia, *Wharton's Criminal Law* § 38 at 255 (15th ed.1993). Accordingly, this Court concluded in *State v. Currie,* 13 N.D. 655, 661, 102 N.W. 875, 877 (1905), that law enforcement officers who feign complicity in a crime in the pursuit of evidence are not accomplices. *See also* C. Torcia, *Wharton's Criminal Law* § 38 at 255 (15th ed.1993).

[¶ 11] In *Currie,* an undercover detective assisted in burglarizing a business, but with the hidden motive of ferreting out a larger criminal enterprise. 13 N.D. at 661, 102 N.W. at 878. The detective did not induce the criminal activity, but did assist in its commission. *Id.* Nonetheless, the Court concluded the detective was not an "accomplice in fact" to the crime. *Id.* The Court explained: "[w]ithout commending this practice, or commenting upon it as dangerous and generally of doubtful propriety, we will say that, if the defendant is shown to have committed the crime in its completeness, the feigned complicity of a detective in the crime should not be a shield to the defendant." *Id.*

[¶ 12] The courts of many of our sister States have reached the same result. *E.g., Cohea v. Texas,* 845 S.W.2d 448, 451–52 (Tex.Ct.App.1993); *Oregon v. Hancock,* 111 Or.App. 92, 825 P.2d 648, 652 (1992); *Marshall v. Arkansas,* 27 Ark.App. 287,

770 S.W.2d 177, 177–78 (1989); *see also* C. Torcia, *Wharton's Criminal Law* § 38 at 255 (15th ed.1993).

[¶ 13] In the present case, Baumgartner was charged with criminal conspiracy to take game in excess of the legal daily limit. The trial court held the game wardens were accomplices; as a result, the wardens' testimony must be corroborated if it were to be used at trial. During the conspiracy to take game in excess of the legal limit, the wardens were engaged in an undercover operation to discover crime. The wardens were without criminal intent and thus were not accomplices. Corroborating evidence is therefore unnecessary.

## II

■ [¶ 14] The State also argues the district court erred in finding entrapment as a matter of law. Questions of law are fully reviewable on appeal. *State v. Kenner,* 1997 ND 1, ¶ 7, 559 N.W.2d 538.

[¶ 15] Section 12.1–05–11(2), N.D.C.C., creates the affirmative defense of entrapment:

A law enforcement agent perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, the law enforcement agent induces or encourages and, as a direct result, causes another person to engage in conduct constituting such a crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

■ [¶ 16] Whether or not one has been entrapped "is almost invariably a question of fact, and a court can only 'find entrapment as a matter of law where the facts and their inferences supporting a

finding of entrapment are undisputed.'" *State v. Murchison,* 541 N.W.2d 435, 441 (N.D.1995) (quoting *State v. Nehring,* 509 N.W.2d 42, 45 (N.D.1993)). Accordingly, when undisputed facts show that the police used unlawful means to induce the crime, there is entrapment as a matter of law. *State v. Kummer,* 481 N.W.2d 437, 438 (N.D.1992). The district court found such facts to exist in the present case. But, it is not clear upon the facts before this Court that the police used unlawful means to induce the crime so as to enable us to conclude there is entrapment as a matter of law.

[¶ 17] In *State v. Tester* we reiterated "'the purpose of a motion to dismiss is to test the sufficiency of the information or indictment. It is not a device for summary trial of the evidence, and facts not appearing on the face of the information cannot be considered.'" 1999 ND 60, ¶ 29, 592 N.W.2d 515 (quoting *State v. Howe,* 247 N.W.2d 647, 652 (N.D.1976)). In the instant case not only was there a summary trial, there was no motion to dismiss pending when the finding was made by the trial court, thereby, "depriving the fact-finder of its exclusive function of determining factual questions." *State v. Tester,* 592 N.W.2d 515, 1999 ND 60, ¶ 29. The question of entrapment was a question of fact for the jury to decide.

[¶ 18] We reverse and remand for further proceedings.

[¶ 19] DALE V. SANDSTROM, WILLIAM A. NEUMANN, and MARY MUEHLEN MARING, JJ., concur.

CAROL RONNING KAPSNER, J.

I concur in the result.